UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RONALD A. LEVY, individually, and on behalf of a class of persons similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>SALCOR, INC, et al.,<br><br>                    Defendants. | CASE NO. C14-5022 BHS<br><br>ORDER GRANTING MOTION TO REMAND |

This matter comes before the Court on the Plaintiff's motion to remand (Dkt. 15). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL & FACTUAL BACKGROUND

This case is a Washington State products liability and consumer protection class action.  On December 4, 2013, Plaintiff filed a complaint against Defendants in Kitsap County Superior Court.  Dkt. 1-1. On December 9, 2013, Defendants were served with a summons and a copy of the complaint, among other documents in Fallbrook, California.

Dkt. 16 at 2-3. On January 9, 2014, Defendants filed a notice of removal with the Court. Dkt. 1.

Defendants' notice of removal states that "[r]emoval of this action is … timely, in that Defendants have filed this Notice of Removal within 30 days of receiving the Summons and Complaint." Dkt. 1 at 2 (*citing* 28 U.S.C. § 1446(b)).

On January 23, 2014, Plaintiff filed the instant motion to remand on the basis that removal was untimely by one day and remand is therefore mandatory. Dkt. 15. On February 10, 2014, Defendants responded in opposition, conceding they filed the notice of removal thirty-one days after they were issued the summons and complaint. Dkt. 19. Yet, they nevertheless argue removal was timely. *Id.* On February 14, 2014, Plaintiff filed a reply. Dkt. 21.

## II. DISCUSSION

This motion asks the Court to determine whether removal was timely pursuant to 28 U.S.C. § 1446(b)(1). This question breaks down into two issues: the first is whether Plaintiff complied with RCW 4.28.185(4) and the second relates to whether the Complaint alleges an amount in controversy in excess of $5,000,000 under the Class Action Fairness Act ("CAFA").[1] Additionally, Plaintiff also seeks attorneys' fees and

---

[1] CAFA grants district courts original jurisdiction over class actions in which: (1) the aggregate amount in controversy exceeds $5,000,000; (2) the members of the putative class of plaintiffs number over 100; (3) any member of the class of plaintiffs is a citizen of a state different from any defendant, thus establishing the required minimal diversity; and (4) the primary defendants are not states, state officials, or other governmental entities. *See* 28 U.S.C. § 1332(d)(2)(A), 1332(d)(5)(A) and (B), and 1332(d)(6).

1  costs incurred as a result of having to make this motion pursuant to 28 U.S.C. § 1447(c).

2  Each issue addressed below.

3  **A.   RCW 4.28.185(4)**

4          As noted above, the parties do not dispute the service of the summons and

5  complaint was made to out-of-state Defendants on December 10, 2013.  Dkt. 19 at 6.

6  According to Plaintiffs, this would make Defendants' removal of the state court action

7  untimely by one day. Dkt. 15 at 3-4 (citing 28 U.S.C. § 1446(b)(1) (requiring notice of

8  removal be filed within 30 days of service of process) and *Schmitt v. Insurance Co. of*

9  *N.A.*, 845 F.2d 1546, 1551 (9th Cir. 1988) (the 30-day time limit is "mandatory" and

10 when not met requires remand)).

11         However, the Defendants contend that Plaintiff has failed to comply with RCW

12 4.28.185(4), making Plaintiff's service of the summons and complaint valid on the date

13 the affidavit regarding out-of-state service was filed. Defendants string-cite federal cases

14 for the proposition that the 30-day removal period is not triggered until valid service is

15 made. Dkt. 19 at 17.  They are inapposite, as none of them involved the affidavit for out-

16 of-state service requirement set forth in RCW 4.28.185(4).  Each case involved non-

17 compliance with other Washington service-of-process statutes. As discussed above,

18 Washington law requires strict compliance with those other service-related statutes but

19 only substantial compliance with RCW 4.28.185(4), and Plaintiff has substantially

20 complied here.  *See Haberman v. WPPPS*, 109 Wn.2d 107, 177 (1987)

21         RCW 4.28.185(4) states in relevant part: "[p]ersonal service outside the state shall

22 be valid only when an affidavit is made and filed to the effect that service cannot be made

1  within the state." However, in contrast to the strict compliance Washington law requires

2  of other service of process-related statutes, such as RCW 4.28.080, *see, e.g., Haberman,*

3  109 Wn.2d at 177, Washington courts have uniformly held that "substantial and not strict

4  compliance" with the affidavit requirement of RCW 4.28.185(4) is sufficient. *Barr v.*

5  *Interbay Citizens Bank of Tampa*, 96 Wn.2d 692, 696 (1982); *Golden Gate Hop Ranch,*

6  *Inc. v. Vesicol Chem. Corp.*, 66 Wn.2d 469, 472 (1965).

7        The filing of the affidavit does not change the date that service of process actually

8  occurred.  As a result, absent a showing of prejudice, a plaintiff substantially complies

9  with the affidavit requirement of RCW 4.28.185(4) so long as the affidavit is filed before

10  judgment is entered.  *Barr*, 96 Wn.2d at 696 ("As [the affidavits] were filed before

11  judgment, the affidavits were timely."); *Golden Gate Hop Ranch*, 66 Wn.2d at 354 ("The

12  statute does not provide that the affidavit must be filed before the summons and

13  complaint are served . . . ."); *Barer v. Goldberg*, 20 Wn. App. 472, 482 (1978) ("No

14  particular time of filing is required as long as it precedes the judgment."); *Java Trading*

15  *Co., Inc. v. Perf. Food Grp. Co.*, 2005 WL 2291116, at *1 (W.D. Wash. 2005) ("It is

16  well-settled, however, that a party substantially complies with Washington's long-arm

17  statute when it files the out of state service affidavit prior to entry of judgment").

18        In this case, Defendants were served with their summons and complaint on

19  December 10, 2013, and Plaintiff filed the 4.28.185(4) affidavit on January 22, 2014,

20  approximately seven weeks after the service of the summons and complaint.  The

21  Defendants do not demonstrate that they were prejudiced or injured due to Plaintiff's

22  January 22, 2014 filing.

1    The Court finds that Plaintiff substantially complied with RCW 4.28.185(4).

2    Although in the context of a statute of limitation issue, a Washington State Appellate

3    Court held that filing of the 4.28.185(4) affidavit twelve months after the statute of

4    limitations ran and a year and two days after the defendant Universal was served with a

5    summons and complaint was substantial compliance. *Ryland v. Universal Oil Co.,* 8 Wn.

6    App. 43, 44-45 (1972).

7    Defendants argue that even if Plaintiff's filing of the affidavit retroactively cured

8    the defect in service, remand would still be improper (Dkt. 19 at 17) because the defect

9    was cured only after removal, and "post-filing developments do not defeat jurisdiction if

10   jurisdiction was properly invoked as of the time of filing." *Id.* at 17-18 (*citing United

11   Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l

12   Union, AFL-CIO,* 602 F.3d 1087, 1091-92 (9th Cir. 2010)). Therefore, Defendants

13   maintain their January 9, 2014 removal was timely pursuant to 28 U.S.C. § 1446(b). Dkt.

14   19 at 18.

15   However, Defendants are incorrect and their reliance on the foregoing case is

16   misplaced, as it addressed whether the district court was divested of jurisdiction

17   subsequent to the denial of class.  As Plaintiff succinctly put it,

18   　　　[g]iven Washington's substantial compliance rule regarding RCW
　　　4.28.185(4) and the holding in *Ryland*, Defendants' argument that Plaintiff's
19   　　　post-removal filing of the required affidavit cannot defeat removal
　　　jurisdiction misses the point: the issue is the untimeliness of Defendants'
20   　　　removal, not the loss of the Court's subject matter jurisdiction due to some
　　　post-removal event. *See United Steel, Paper & Forestry, Rubber, Mfg.
21   　　　Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO,* 602 F.3d
　　　1087, 1091-92 (9th Cir. 2010).

22

1 Dkt. 21 at 12 n.8.

2 **B.     Amount In Controversy**

3        The parties put forth significant argument on the issue of whether the

4 Complaint alleged in excess of $5,000,000 such that it triggered the 30-day removal

5 deadline under 28 U.S.C. § 1446(b).

6        According to Defendants, "[b]ased upon his best recollection at the time,

7 [Defendant] Mr. [James E.] Cruver attested that he was served with the Summons and

8 Complaint at his California home on December 10, 2013." Dkt. 19 at 8 and *see* Dkt. 1-2

9 at 4.  In Defendants' notice of removal, they indicate that "[r]emoval of this action is …

10 timely, in that Defendants have filed this Notice of Removal within 30 days of receiving

11 the Summons and Complaint.  Dkt. 1 at 2 (*citing* 28 U.S.C. § 1446(b)). *See also* Dkt. 1 at

12 7 ("This notice is filed within thirty days of service as required by 28 U.S.C. § 1446(b)(1)

13 (*citing Murphy Bros., Inc. v . Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-348 (1999)

14 (30-day removal period begins on service of summons and complaint)). Therefore,

15 Defendants allege that "[r]emoval of this action is timely." Dkt. 1 at 7.

16        Significantly, the Defendants also state in their notice that, based on the "damages

17 and relief" set forth in the Complaint, "Plaintiff's Complaint meets the requirement for

18 removal under the Class Action Fairness Act of 2005 ("CAFA"), including the amount in

19 controversy requirement of $5,000,000."  Dkt. 1 at 3 and 7.  In support of removal,

20 Defendants submitted Cruver's sworn declaration (Dkt. 1-2) indicating that, as "founder,"

21 "CEO and president of Salcor for over 30 years," Cruver "personally manages day-to-day

22 operations," and he is "familiar with the design, sale and installation of OSSs and the

Salcor 3G unit " at issue in this case.  Dkt. 1-2 at 3.  Relying on Cruver's declaration, the Defendants state that "the actual damages sought by the class of more than 6,000 units in Washington exceeds $5,000,000," even excluding the trebling of damages and other damages sought in the Complaint. Dkt. 1 at 6.

Now that Defendants have conceded that they were served on December 9, 2013, making their removal one day after the deadline, they maintain that they were not "bound" by the 30-day deadline set forth in 28 U.S.C. § 1446(b), the statute pursuant to which they indicated their notice of removal was timely. *See* Dkt. 19 at 6 and 12. According to Defendants' newly waged argument, they could not have been bound by § 1446(b)'s 30-day deadline because "the Complaint was not removable solely by reference to its four corners, [therefore] Defendants [had to] conduct their own investigation."  *Id*.  Specifically, Defendants argue that because the Complaint did not reveal a basis for removal that could be ascertained on its face or was facially indeterminate, the 30-day deadline for removal is not triggered, and they have no "duty to make further inquiry," including no duty to delve into their "subjective knowledge."  *Id*. at 10 (*citing Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir 2005)).

However, in applying the indeterminate complaint rule, courts still use common sense and view the allegations in the complaint under an "objective analysis." *Harris*, 425 F.3d at 697. As Plaintiff argues, to this end, a defendant is required "'to apply a reasonable amount of intelligence in ascertaining removability' when reviewing a complaint's allegations."  Dkt. 21 at 3 (*citing Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013)).  Likewise, as Plaintiff maintains, district courts "do

1   not apply the indeterminate complaint rule in a vacuum." Dkt. 21 at 3. Instead, as

2   Plaintiff argues, based on reasoning this Court finds consistent with its own view of

3   removal, "courts are mindful of 'litigation realities' and do not ignore what is 'facially

4   apparent' from a complaint even if not stated in black-and-white terms." *Id.* (*citing*

5   *Jellinek v. Advance Prods. & Sys., Inc.*, 2010 WL 3385998, at *2 (S.D. Cal. Aug. 24,

6   2010)).

7          Although no dollar figures are alleged in the Complaint, the Court finds that in

8   reviewing the Complaint with application of a reasonable amount of intelligence based on

9   the personal facts within Cruver's possession and the allegations themselves, whether the

10  amount in controversy met the CAFA threshold could have been ascertained based on the

11  Complaint itself. Defendants did not have to delve into the terrain of their prohibited

12  subjective knowledge to determine that the Complaint sought an amount in excess of

13  $5,000,000.

14         As Mr. Cruver's declaration reveals, he is "familiar with the design, sale, and

15  installation of . . . the Salcor 3G unit," because he has been the president and CEO of

16  Salcor "for over 30 years." Dkt. 1-2 ¶ 6. Occupying such a position, it is reasonable to

17  assume that he did not need to perform research or investigation to ascertain the typical

18  purchase price and installation costs of his own company's product. Given his day-to-

19  day management of operations, it would have been immediately known to Cruver that a

20  unit's purchase price is "$650 to $900" and the labor charge for installation is "between

21  $350 and $600." *Id.* ¶ 7. For someone in Mr. Cruver's position, as Plaintiff argues

22  based on the reasoning in an unpublished case, the Court can reasonably presume that the

1   typical sales price and installation costs of Defendants' product is indeed a "'personal

2   fact.'"  Dkt. 21 at 6 (*citing KDY, Inc. v. Hydroslotter Corp.*, 2008 WL 4938281 at *4

3   (N.D. Cal. Nov. 17, 2008) (applying *Harris*, the court held removal untimely finding that

4   "courts surely can presume that a defendant is aware of various basic personal facts,

5   including the location of one's citizenship, without delving into the prohibited area of a

6   defendant's subjective knowledge")).  Although this may seem to be a close call with

7   regard to the distinction between "subjective knowledge" and "personal facts," the Court

8   concurs with Plaintiff's reasoning in this particular instance, finding the information

9   immediately apparent to Cruver about pricing and installation fall within the realm of

10   personal facts.

11          However, even if the Defendants did not consider any personal facts readily

12   apparent to Cruver, they still would have known that Plaintiff's allegations, including that

13   "more than 5,000" units were at issue (Dkt. 1-1 at ¶ 6), met CAFA's amount in

14   controversy requirement.  The Complaint invokes RCW 2.08.010 as the primary basis of

15   the state court's jurisdiction.  Dkt. 1-1 ¶ 2. This statute "grants original jurisdiction to the

16   superior court in all cases in which the value of the property in controversy exceeds three

17   hundred dollars." *City of Walla Walla v. $402,333.44*, 164 Wn. App. 236, 248 (2011).[2]

18   Additionally, Plaintiff also is entitled to an award of attorneys' fees and costs if he

19   prevails. RCW 19.86.090.  In class claims, courts in the Ninth Circuit may employ a 25%

20   _____

21      [2] Alternatively, without resort to any research or investigation, but within the realm of
     personal facts, Cruver surely would have known that the price alone for the alleged 5,000 units
22   was over $300 a piece and that installation of each would have raised the amount of actual
     damages beyond that.

1  "benchmark" in calculating awardable fees. *Paul, Johnson, Alston & Hunt v. Graulty*,

2  886 F.2d 268, 272 (9th Cir. 1989). Applying the 25% benchmark to the $4,500,000 figure

3  yields $1,125,000, bringing the total claim value to $5,625,000. However, an even more

4  conservative estimate of $500,000 in statutory fees would still bring the amount in

5  controversy to the $5,000,000 CAFA threshold. Plaintiff properly summarized a

6  conservative estimate of the amount in controversy, excluding injunctive relief, as

7  follows:

8           Putting aside for the time being the value of the other requested relief
         (such as the injunction sought), the actual damages figure need only be $300
9        per class member when treble damages and a conservative estimate of
         $500,000 in reasonable class-wide attorneys' fees are factored in (as they
10       must be): 5,000 x $300 = $1,500,000 x 3 = $4,500,000 + $500,000 =
         $5,000,000.

11  Dkt. 21 at 4.

12          Given the foregoing, the Court finds that Plaintiff's Complaint revealed the

13  amount in controversy necessary for removal, and the Defendants' notice of removal was

14  untimely.

15  **C.     Attorney's Fees and Costs**

16          In addition to remanding the case, Plaintiff also seeks attorneys' fees and costs for

17  the filing of the instant motion. Although 28 U.S.C. § 1447(c) authorizes the imposition

18  of attorneys' fees when a case is remanded, the Court declines to do so.

19

20

21

22

1

**III. ORDER**

2          Therefore, it is hereby **ORDERED** that Plaintiff's motion to remand (Dkt. 15) is

3   **GRANTED**.  The Clerk is directed to remand this case to Kitsap County Superior Court

4   where it was originally filed.

5          Dated this 25th day of February, 2014.

6

7   _____

8   BENJAMIN H. SETTLE
    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22